NOT FOR PUBLICATION                    [Docket No. 30]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

SEBASTIAN MAZZAGATTI,

        Plaintiff,          Civil No. 13-CV-2834 (RMB/JS)

   v.

                       **OPINION**

MORPHO DETECTION INC.,
        Defendant.

Drake Bearden, Jr.
Costello & Mains, P.C.,
18000 Horizon Way
Suite 800
Mt. Laurel, NJ 08054
    Attorneys for Plaintiff

Jason Storipan
Fisher & Phillips LLP
430 Mountain Ave
Murray Hill, NJ 07974
    Attorneys for Defendant

**BUMB**, United States District Judge:

    Plaintiff Sebastian Mazzagatti ("Plaintiff") has asserted claims pursuant to the New Jersey Law Against Discrimination ("LAD") for age discrimination and retaliation against Defendant Morpho Detection LLC ("Morpho" or "Defendant"). Defendant has moved for summary judgment. For the reasons that follow, Defendant's motion is granted in part and denied in part.

1

I.    Background

A. *Morpho Detection, Denis Leblond and Michael Cavanaugh*

The Plaintiff was hired by Morpho Detection (previously known as GE Security) in April 2007. Plaintiff's Statement of Fact ("PSOF") and Defendant's Response ("DR") at ¶ 1.  As a Regional Service Manager ("RSM"), Plaintiff's initial responsibilities were to manage northeast operations from his home office, which included all of the airports from Maine to Philadelphia and as far west as Pittsburgh.  Defendant's Statement of Facts "DSOF" and Plaintiff's Response ("PR") at ¶ 4.  In 2007 and 2008, Plaintiff's region expanded.  Id. at ¶¶ 7-8.  By 2009, Plaintiff's region included everything in the United States east of Dallas, Texas, Puerto Rico, Jamaica and Canada.  Id. at ¶ 9. In September of 2011, Plaintiff received a 10 percent merit-based raise, and a performance rating of "exceeds expectations."  PSOF & DR at ¶ 6.  Also in 2011, Plaintiff requested information from Sammi Mukherjee ("Mukherjee"), Human Resources Manager, regarding Morpho's retirement plan.  DSOF & PR at ¶ 10.  Plaintiff avers that he had no plans to retire.

Denis Leblond was a consultant hired by Morpho Detection's parent company, who was offered to Morpho Detection as an "asset" to use. PSOF & DR at ¶ 8.  Plaintiff contends that during several meetings with Leblond, Leblond stated to Plaintiff that it was time for some of the "older guys" to "move over" and let some of

2

the "younger people" manage and that Plaintiff should retire to his beach house.  PSOF at ¶¶ 9 & 10.  Plaintiff further contends that he insisted he was not ready to retire yet and, at a later meeting, Leblond again encouraged Plaintiff to retire. Id. at 11.

Michael Cavanaugh ("Cavanaugh") became the Vice President and General Manager of Global Services at Morpho in February 2012.  DSOF & PR at ¶ 11.  Plaintiff contends that Cavanaugh was present during his conversations with Leblond about retirement. PSOF at ¶ 12.  Defendant denies the characterization of the conversations as set forth by Plaintiff.  DSOF at ¶ 12.

### B. Cavanaugh Plans a Restructuring

As Vice President and General Manager for Global Services, Cavanaugh was responsible for overseeing Morpho's service business and was tasked with meeting certain financial objectives and targets related to profit and loss, earnings before interest, and taxes.  DSOF & PR at ¶ 11.  Upon beginning his position, Cavanaugh decided that he was going to restructure Morpho Detection and created a reduction-in-force ("RIF") chart.  PSOF & DR at ¶ 16.  According to Cavanaugh, "when I started the process at the end of February, I honestly didn't believe that [Plaintiff] would have a long-term role based on my experience working with [Plaintiff], because Cavanaugh, "thought he was pompous and a little arrogant and disrespectful to a lot of people in the company."  Id. at ¶¶ 16-17.

At the time of the proposed RIF, John Lacombe ("Lacombe") held an equivalent position to Plaintiff, as a Regional Service Manager, but managed a different region – from Dallas, Texas to the West Coast.  DSOF & PR at ¶ 21.  On April 12, 2012, Mukherjee sent a letter to Cavanaugh suggesting that, as part of the reorganization, both Plaintiff and Lacombe be terminated and given the chance to reapply for the newly created Area Service Manager Position for Canada. Pl.'s Ex. E.  The parties' versions of the events that follow differ dramatically.

Defendant contends that in March or April 2012, Cavanaugh briefed Morpho CEO, Bradley Buswell ("Buswell"), on the proposed organizational changes, informed him that Plaintiff's position was going to be eliminated, and told him that Plaintiff would be kept on until the end of the year to ensure a smooth transition. DSOF at ¶ 16.  Defendant further avers that on April 17, 2012, Cavanaugh informed Plaintiff that his position was being eliminated and that Morpho would like to keep him on through November to help with the transition of Canadian Air Transport Security Agency ("CATSA").  Id. at 17.  Defendant contends that Plaintiff was further informed that Morpho was posting a new role to which he could apply. Id.

On April 19, 2012, Plaintiff participated in a conference call with Cavanaugh with key people in the organization to announce the forthcoming organizational changes, and the

4

official announcement of the organizational changes was issued on April 19, 2012. DSOF at ¶¶ 18-19.  Plaintiff's position as RSM was eliminated in the reorganization, and, after the reorganization, Cavanaugh became Plaintiff's direct supervisor. Id. at ¶¶ 20-21.  Defendant contends that Cavanaugh was not aware of Plaintiff's or Lacombe's respective ages at that time. Id. at ¶¶ 25-26.

In contrast, Plaintiff contends on April 19, 2012, the Plaintiff was notified by Cavanaugh that he, Lacombe and other employees' positions were going to be eliminated due to the reorganization, and that Plaintiff would remain in a transitional position until the end of 2012 to transition the CATSA business. PSOF at ¶ 24. Plaintiff then would be given a new position after the transition was finished.  PSOF at ¶ 25. At the end of April or in the beginning of May 2012, Plaintiff had a conversation with Cavanaugh in which Plaintiff was told to create a position for himself that he would have after the transition was complete.  Id. at 26.  Plaintiff alleges that he was not told that this new job was not a real job and that he had been scheduled to be terminated all along at the end of 2012.  Id. at ¶ 28

*C. Area Service Manager Position & John Lacombe*

When the reorganization was announced in April 2012, it was also announced that there would be an Area Service Manager

5

("ASM") position in Canada.  DSOF & PR at ¶ 35.  Plaintiff contends, and Defendant denies, that he did not apply for the ASM position simply because he had been told by Cavanaugh that he was going to be offered another new position.  PSOF at ¶ 31. The parties agree that at the time of the reorganization, Lacombe was a RSM for less than one year, and was in his mid-40s; Plaintiff had been a RSM for five years, and was he was sixty-seven years old.  PSOF & DR at ¶ 32 & 33.

The Plaintiff was involved in the hiring process for the ASM for Canada because, according to Cavanaugh, "he understood the customer and the customers' needs probably better than anybody else in the service group." Id. at ¶ 35.  Ultimately, Cavanaugh hired Lacombe for the ASM position.  Id. at 39. Cavanaugh also asked Plaintiff to train Lacombe for the ASM Canada position because Plaintiff had a good relationship with the CATSA client and a good working relationship with Lacombe. Id. at ¶ 36.

*D. Plaintiff's Continued Employment at Morpho*

The parties agree that on September 9, 2012, Cavanaugh sent an email to William Fischer, another employee of Morpho, stating that he did not intend to keep Plaintiff on in any capacity after December 31, 2012, unless Fischer or Lacombe believed Plaintiff was needed.  DSOF & PR at ¶ 38.  Plaintiff applied for and interviewed for the Manager of Service Strategy and

6

Development position, and received a job offer from Cavanaugh on
September 12, 2012. PSOF at ¶ 42. Defendant agrees that on
September 12, 2012, Cavanaugh offered the position of Manager of
Service Manager of Service Strategy and Development position.
Plaintiff did not accept the position on September 12, 2012
because he was concerned that the job offer included a false
start date; it is undisputed that the offer letter provided a
start date of May 29, 2012. PSOF & DR at ¶ 43.

> E. Plaintiff's EEOC Charge and Termination

After receiving the backdated offer letter, Plaintiff asked
Cavanaugh why there was a false starting date, and Cavanaugh
failed to provide any response. PSOF at ¶ 44. On September 14,
2012, Plaintiff telephoned Morpho's ombudsman, Eric Nielsen to
discuss the backdated letter. DSOF & PR at ¶ 42. Plaintiff
also discussed the backdated offer letter and comments by
Leblond with Allyn McGinley, Morpho's General Counsel. Def.'s
Ex. D, Pl.'s Dep: 120:18-122:9. On September 18, 2012,
Plaintiff wrote an email to Cavanaugh because he finally
realized that it was Cavanaugh's intention to fire Plaintiff at
the end of the year. PSOF at ¶ 45. In the email, Plaintiff
complained that he believed he was being subjected to
discrimination because of his age and stated, "I'm asking you to
be honest with me. Are you planning to lay me off on December
31?" PSOF at ¶ 46. Plaintiff avers he did not receive a

response to this inquiry, but instead received a termination letter about two months later on November 14, 2012.  DSOF at ¶ 52. Plaintiff was terminated from his employment with Morpho effective December 31, 2012. DSOF & PR at ¶ 54.

On October 23, 2012, prior to his termination, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission alleging age discrimination.  DSOF & PR at ¶ 48.  Plaintiff admits that neither Cavanaugh nor Buswell ever made any comments to Plaintiff regarding his age.  Id. at ¶ 50.  In Plaintiff's October 23, 2012 Charge, the address listed for Morpho is actually Plaintiff's home address.  Id. at ¶ 49. Between approximately November 6 and 13, 2013, Plaintiff called the EEOC to inform him the employer's notice of his October 23, 2012, EEOC complaint had been delivered to his home.  Id. at ¶ 51.  On November 29, 2012, Plaintiff filed a claim with the EEOC against Morpho for retaliation.  Id. at ¶ 53.

On March 4, 2013, Plaintiff filed a Complaint, and then a First Amended Complaint with Superior Court of New Jersey, Burlington County, that was removed by Morpho[1] to this Court. [Docket No. 1].  Per the First Amended Complaint, Plaintiff, who as 69 years of age at the time of the Complaint was filed, asserts causes of action against Morpho for Age Discrimination

_____

[1] A second defendant, Safran USA, has been terminated from this action by stipulation of the parties.  Docket No. 29.

under the New Jersey Law Against Discrimination ("LAD"),
N.J.S.A. § 10:5-12(d), and unlawful retaliation as a consequence
of engaging in protected conduct under the LAD.  Morpho has
moved for summary judgment on both counts.

II.  <u>Standard</u>

Summary judgment shall be granted if "the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a). A fact is "material" if it will "affect the
outcome of the suit under the governing law . . . ." <u>Anderson v.
Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute is
"genuine" if it could lead a "reasonable jury [to] return a
verdict for the nonmoving party."  <u>Id.</u>

When deciding the existence of a genuine dispute of
material fact, a court's role is not to weigh the evidence; all
reasonable "inferences, doubts, and issues of credibility should
be resolved against the moving party."  <u>Meyer v. Riegel Prods.
Corp.</u>, 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, a mere
"scintilla of evidence," without more, will not give rise to a
genuine dispute for trial.  <u>Anderson</u>, 477 U.S. at 252. Further,
a court does not have to adopt the version of facts asserted by
the nonmoving party if those facts are "utterly discredited by
the record [so] that no reasonable jury" could believe them.
<u>Scott v. Harris</u>, 550 U.S. 373, 380 (2007). In the face of such

9

evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party . . . ." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995); Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009)) ("[S]peculation and conjecture may not defeat

summary judgment.").

III. <u>Analysis</u>[2]

    *A. Retaliation Claim*

    Defendant argues that summary judgment is warranted because Plaintiff has failed to establish a prima facie case of retaliation.  More specifically, Defendant contends that Plaintiff's retaliation claim fails because it decided to terminate Plaintiff's employment effective December 31, 2012, months before Plaintiff engaged in any protected activity. Def.'s Br. at 5.

    In order to make out a prima facie case of retaliation under the LAD, a plaintiff must show that it: (1) engaged in a protected activity of which the employer was aware; (2) suffered an adverse action; and (3) a causal connection exists between the protected activity and adverse action.  <u>Michaels v. BJ's Wholesale Club, Inc.</u>, 2015 U.S. App. LEXIS 4618, at *6 (3d Cir. Mar. 20, 2015).[3]  Defendant contends that Plaintiff cannot

---

[2] Plaintiff submitted an improper sur-reply without leave of Court in violation of New Jersey Local Civil Rule 7.1(d)(6), which states "[n]o sur-replies are permitted without permission of the Judge . . . to whom the case is assigned." <u>See</u> Docket No. 35.  This Court has, therefore, disregarded the sur-rely and, therefore, denies Defendant's attendant request to file a response to that sur-reply.  <u>See</u> Docket No. 36.

[3] Once a prima facie case is made, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for taking the adverse action.  <u>Id.</u> at 6-7.  If the defendant meets that burden, the plaintiff then bears the burden of providing that the defendant's reason was merely pre-textual, by

fulfill the third prong because the earliest he engaged in any type of protected activity was on September 14, 2012, when he telephoned Morpho's ombudsman, Eric Nielson, to complain that the job offer to him had been backdated.  However, Plaintiff agrees that on September 9, 2012, Cavanaugh sent an email to a William Fischer of Morpho stating that he did not intend to keep Plaintiff on in any capacity after December 31, 2012, unless Fischer or Lacombe believed Plaintiff was needed.  DSOF & PR at ¶ 38.

In order to survive summary judgment, "the party opposing the motion must go beyond its pleading and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial.").  In re IKON Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002).  In his opposition to Defendant's Motion for Summary Judgment, Plaintiff does not address the retaliation claim at all.  Thus, the Court assumes that Plaintiff has abandoned such claim.  Because Plaintiff has not met his burden in opposing summary judgment on this claim, the Court will

---

pointing to "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action[.]" Id. at 7 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

require Plaintiff to confirm within fourteen days of this Opinion whether he has conceded the claim.  If so, the claim will be dismissed.  If Plaintiff does not concede the claim, the Court will render an adjudication on the merits.

   B. Age Discrimination Claim[4]

   In contrast to the retaliation claim, this Court finds that Plaintiff has sufficiently demonstrated that genuine disputes of material fact exist with respect to his LAD age discrimination claim for the reasons set forth below.

   Claims for age discrimination in violation of the LAD require that a Plaintiff first establish a prima facie case. Kremp v. Wachovia Bank, N.A., 451 F. App'x 151, 155-56 (3d Cir. 2011).  To make out a prima facie case of age discrimination, a plaintiff must put forth evidence that he: "(1) is a member of the protected class, (2) was qualified for the position held, (3) suffered an adverse employment action, and (4) 'ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination.'"  Sgro v. Bloomberg L.P., 331 Fed. Appx. 932, 938 (3d Cir. 2009)(quoting Monaco v. American General Assur. Co., 359 F.3d 296, 300 (3d Cir. 2004)).

---

[4] The parties agree that the appropriate standard to apply is the familiar burden shifting standard set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Swain v. City of Vineland, 457 F. App'x. 107, 110 (3d Cir. 2012)(noting that and NJLAD are analyzed under the familiar burden-shifting framework set forth in McDonnell Douglas).

Once a Plaintiff makes out a prima facie case, the burden shifts to the defendant to advance a legitimate basis for its actions. <u>Swain v. City of Vineland</u>, 457 Fed. Appx. 107, 110 (3d Cir. 2012). Where a defendant advances a legitimate justification, the burden shifts again to the plaintiff to demonstrate that the advanced rationale was pre-textual. <u>Id.</u> To do so, the plaintiff must "point to some evidence upon which a factfinder could reasonably either disbelieve [the defendant's] articulated motive or believe that" an improper motive was more likely than not the motivating cause for the defendant's action. <u>Kremp</u>, 451 F. App'x at 156.

A plaintiff attempting to discredit the employer's proffered reason "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765 (3d Cir. 1994). Instead, the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." <u>Id.</u> (quotation and citation omitted). "[S]tray

14

[inappropriate] remarks" by non-decision makers, or by decision-makers unrelated to the decision making process, carry little weight, particularly if such remarks were made at a temporally remote time from the date of the decision at issue.  Kremp, 451 F. App'x at 156.

Defendant contends that it is entitled to summary judgment on Plaintiff's LAD age discrimination claim for two reasons: 1) Plaintiff fails to establish a prima facie case of age discrimination because he fails to demonstrate that the employer retained someone similarly situated to him who was significantly younger, and 2) Plaintiff cannot establish that Morpho's legitimate, nondiscriminatory reason for terminating Plaintiff – i.e., that Morpho decide to eliminate two layers of management to streamline efficiency and cost savings – is a pretext for discrimination.  The Court will address each argument in turn.

   *i.  Plaintiff's Prima Facie Case*

First, with respect to the fourth element of the prima facie case, Defendant argues that it eliminated the RSM positions held by both Plaintiff and Lacombe, and any argument that Lacombe was retained as the Area Service Manager whereas Plaintiff was terminated "fails because [Plaintiff] did not apply for the manager position" and, therefore, Lacombe and Plaintiff were not similarly situated.  In its reply brief, Defendant also argues that a new position was offered to

15

Plaintiff, but he declined that position.  Def.'s Reply Br. at
2-3.

This Court agrees that Plaintiff has presented sufficient
evidence to create a genuine dispute of fact as to whether
Morpho replaced Plaintiff with a person sufficiently younger
(i.e., Lacombe in the ASM position) to permit an inference of
age discrimination.  There is sufficient evidence of record
supporting Plaintiff's argument that he did not apply for the
ASM position solely because he was told by Cavanaugh, falsely,
that there would be another new position created for him.  This
evidence, including Plaintiff's testimony, is substantiated by
emails sent to Plaintiff by Cavanaugh discussing the new
position.  See e.g., Pl.'s Ex. A, Pl.'s Dep. at 74:18-75:10
(discussing Cavanaugh's request that Plaintiff put together a
job description for his new position and Plaintiff's testimony
that there was no indication that the position was temporary);
Def.'s Ex. B, Cavanaugh Dep. at MC-10 (June 29, 2012-July 3,
2012 email chain between Plaintiff and Cavanaugh wherein
Plaintiff proposes activities for his new position and Cavanaugh
discusses Plaintiff's "new role" with no mention of a December
31, 2012 end date).

Moreover, the email sent to all Morpho employees announcing
the changes in the organization noted, with respect to both
Plaintiff and Lacombe, that "[w]hile we have eliminated Ben's

16

[Mazzagatti] and John's [Lacombe] roles, both Ben and John will stay with the Services business in new positions." Def.'s Ex. B, Cavanaugh Dep. at MC-7. Again, there is no indication that Plaintiff's employment would end effective December of 2012. Most strikingly, the "backdated" offer letter extending Plaintiff the position of "Manager, Service Strategy and Development" is dated September 12, 2012, a mere matter of months before Plaintiff's employment was allegedly set to end, and provides no mention whatsoever that the position was only temporary. Def.'s Ex. B, at MC-13.

Finally, other documents demonstrate that, even prior to the announcement of the reorganization, Cavanaugh had "planned" for Lacombe to take the ASM position, regardless of whether or not Plaintiff applied. See Def.'s Ex. B, Cavanaugh Dep. at MC-2, (April 9, 2012 email from Cavanaugh to Mukherjee stating, with respect to John Lacombe: "we will eliminate the RSM layer of the business, and let him know we'd like to retain him as an ASM for Canada or some other ASM position that makes sense."). In light of this evidence, this Court finds Defendant's argument that Plaintiff and Lacombe are not similarly situated because Plaintiff never applied for the ASM position rings hollow. Instead, the evidence indicates that Lacombe, who was at least twenty years younger than Plaintiff, was "slated" for the ASM

position and that Plaintiff did not apply for the position because he was promised another role.

Moreover, construing all inferences in favor of the Plaintiff, all of the discussions regarding placing Lacombe in the ASM position take place against a backdrop giving rise to an inference of age discrimination. First, it is undisputed that Lacombe is approximately twenty years younger than Plaintiff. PSOF & DR at ¶¶ 32 & 33. Second, Plaintiff has presented evidence that the decisions regarding his future at Morpho were made with efforts to push him to retirement in mind. For example, Plaintiff contends that Leblond stated that it was time for some of the "older guys" to "move over" and let some of the "younger people" manage and that Plaintiff should retire to his beach house. PSOF at ¶¶ 9 & 10. In addition, emails by Cavanaugh and Mukherjee regarding the anticipated reorganization mention Plaintiff's impending "retirement" even though Plaintiff testified that he had only inquired about the retirement plan and had no plans to actually retire. For example, in an April 9, 2012 email from Cavanaugh to Mukherjee, Cavanaugh wrote that Plaintiff "will meet his retirement age if we RIF next week since he will get 4 weeks of working notice through his retirement age." Def's Ex. B at MC-2.

In light of the above, Plaintiff has provided sufficient evidence to create an issue of fact as to whether he did not

18

apply for the ASM position because he had been promised another position with Morpho.  This dispute of fact, coupled with the comments related to Plaintiff's "retirement" would allow a reasonable trier of fact could find that Plaintiff, who was more qualified that Lacombe, was replaced by a younger employee under circumstances giving rise to an inference of discrimination. See Arenas v. L'Oreal United States Prods., Inc., 790 F. Supp. 2d 230, 237 (D.N.J. May 13, 2011)("in establishing the fourth element of a prima facie case age discrimination under the NJLAD, '[t]he focal question is not necessarily how old young the claimant or [her] replacement was, but rather whether the claimant's age, in any significant way, 'made a difference' in the treatment [he] was accorded by [his] employer.'")(quoting Young v. Hobart West Grp., 385 N.J. Super. 448, 459 (App. Div. 2005)).

   *ii.  Pretext*

   Having found that Plaintiff sufficiently establishes a prima facie case under the LAD, the Court must now turn to Defendant's arguments that Plaintiff cannot sufficiently discredit its legitimate non-discriminatory reason for Plaintiff's termination – i.e., that Plaintiff was terminated due to an elimination of his position to "streamline efficiency and for costs savings" and because he "was not a team player." Defs.' Br. at 8.

First, with respect to Cavanaugh's testimony that Plaintiff "was pompous and a little arrogant and disrespectful to a lot of people in the company,"[5] other evidence of record indicates that Plaintiff was well-regarded as his responsibility continued to expand over time. DSOF & PR at ¶¶ 7-9. Moreover, he received a 10 percent merit-based raise in September 2011, only a few months prior to the reorganization decision. See PSOF at ¶¶ 6-9. There is no other evidence of record in support of Defendant's argument that Plaintiff was terminated because he was not a team player other than Cavanaugh's own deposition testimony. Furthermore, the "team player" reason was not the reason provided to Plaintiff during the RIF. This contradiction undercuts Defendant's attempts to paint Plaintiff as a non-team player or, at the very least, creates a genuine dispute of fact as to the same. See Abramson v. William Paterson Coll., 260 F.3d 265, 284 (3d Cir. 2001)("[i]f a plaintiff demonstrates that the reasons given for her termination did not remain consistent, beginning at the time they were proffered and continuing throughout the proceedings, this may be viewed as evidence tending to show pretext, though of course it should be considered in light of the entire record."); Buchholz, v. Victor Printing, Inc., 877 F. Supp. 2d 180, (D.N.J. June 29,

---

[5] DSOF & PR at ¶¶ 16-17.

2012)(finding that plaintiff had adequately demonstrated pretext where defendant stated at the time of termination that plaintiff was fired for lack of work, but then provided their alleged nondiscriminatory reason for his termination as his negative driving record).

With respect to the alleged comments of Denis Leblond encouraging Plaintiff to retire and the questions by Sammi Mukherjee asking him about retirement plans, Defendants argue that such comments are merely stray remarks by non-decisionmakers unrelated to the decision making process.  While Leblond may not have been a decision maker, his comments, placed against the backdrop of other evidence supports the finding that there is a dispute of fact as to whether Defendant's proffered reason for the termination is pretextual.  <u>Swiatek v. Bemis Co.</u>, 542 F. App'x 183, 187 (3d Cir. Oct. 17, 2013)(stating that not "every non-decisionmakers' comment is irrelevant," and that a stray remark that is not temporally remote, when coupled with the speaker's position, can fairly be considered with other evidence offered to prove the alleged discrimination).  In addition, Mukherjee and Cavanaugh did discuss the RIF, including comments related to Plaintiff's alleged retirement, prior to the decision to terminate Plaintiff's RSM position. <u>See</u> Def.'s Ex. B at MC-2 (Cavanaugh's email to Mukherjee discussing the RIF in relation to Plaintiff's retirement date).

Perhaps most relevant to demonstrating pretext is the
September 18, 2012 email from Plaintiff to Cavanaugh, in which
Plaintiff wrote, <u>inter</u> <u>alia</u>:

> During the re-organization, **I was treated differently than
> other Managers.  I was restricted from applying for one of
> the 5 remaining operational manager jobs . . . clearly
> being the employee with the most experience in the
> position, albeit the most senior in age.**  Long before job
> postings were put up, the identities of those employees who
> would fill the positions were cast and Sr. Management
> preferences were announced on an April 2012 staff
> conference call.  Lacombe to Canada, Mazzagatti to retire,
> etc. Sammi sent me an email asking if I planned to retire
> in 2012 only 2 weeks before the reorganization announcement
> (coincidence?).  She claims it was as a result of a request
> for information I submitted a year earlier.  **I was not at a
> point in my life where I wanted to retire.**  Prior to the
> organization restructure, your consultant, Denis Leblond
> urged me to retire on three separate occasions over a 4
> month period.  **One time actually suggesting that I 'move
> over and allow the younger managers to manage.'** Yes!  I did
> report the incidents when they happened and there were
> other employees in the area to hear his disturbing comments
> to me.  Am I just to continue to assume that replacing me
> in my job was all just a coincidence?
>
> Asking me to sign an offer agreement which 'pre-dates' the
> start for my new assignment just perpetuates deceitful and
> unfair treatment.
>                      * * *
> **I am asking you to be honest with me. . . are you planning
> to lay me off on December 31st?**

Def.'s Ex. B, at MC 14 (emphasis added).  Tellingly, Cavanaugh's
response does little to disabuse Plaintiff of his concerns
regarding age discrimination or the end date of the new
position, stating instead, in relevant part: "I think it is in
our best interest to move forward and not get into a back-and-
forth on each statement below . . . we agreed to rescind the

22

offer.  We will revise the offer letter to be more specific

about the role, deliverables and to address the concerns you've

raised." Id.  Again, Cavanaugh never mentions that Plaintiff's

employment would end effective December 31st regardless of the

start date offered, and there was never a revised job

description sent to Plaintiff; instead, he was simply

terminated.

As argued by Plaintiff, Defendant's alleged reason for

Plaintiff's termination, eliminating a layer of management, does

not explain why Cavanaugh decided that Plaintiff was going to be

terminated at the end of the year, months after the RIF, nor

does it explain why Plaintiff was led to believe he was going to

be placed in a newly created position.  Here, much of the

evidence supporting the fourth prong of Plaintiff's prima facie

case, discussed above, also helps establish pretext because it

casts doubt on Defendant's proffered nondiscriminatory reason

that Plaintiff was terminated to streamline efficiency and for

costs savings.  The fact that Plaintiff was led to believe that

he would be given a new position with the company and was not

told that position would end effective December 31, 2012 makes

little sense if Defendant could have simply stated to Plaintiff,

"We must terminate you for cost reasons," and have left it at

that.  See e.g., Pl.'s Ex. A, Pl.'s Dep. at 74:18-75:10

(discussing Cavanaugh's request that Plaintiff put together a

job description for his new position and Plaintiff's testimony
that there was no indication that the position was temporary);
Def.'s Ex. B, Cavanaugh Dep. at MC-10 (June 29, 2012-July 3,
2012 email chain between Plaintiff and Cavanaugh wherein
Plaintiff proposes activities for his new position and Cavanaugh
discusses Plaintiff's "new role" with no mention of a December
31, 2012 end date).

     The fact that Plaintiff has presented evidence that he was
led to believe he would be given another position to prevent him
from applying for the ASM position, which was given to a less
experienced co-worker nearly twenty years his junior, leads this
Court to find that a reasonable fact finder could find that
Morpho's purported legitimate non-discriminatory reason for
terminating Plaintiff unworthy of credence.  See Fuentes, 32
F.3d at 765 (stating that a demonstration of pretext requires
plaintiff to show contradictions in the employer's proffered
legitimate reasons for hits actions such that a reasonable
factfinder could rationally find them unworthy of credence).
Thus, Plaintiff's age discrimination claim shall survive summary
judgment.


IV.  Conclusion

     For the above stated reasons, Defendant's motion for
summary judgment is DENIED with respect to Plaintiff's age

                              24

discrimination claim as described above.  The Court will render

a final judgment as to Plaintiff's retaliation claim once

Plaintiff informs this Court whether or not he has conceded this

claim.  An appropriate Order will issue this date.


                                    s/Renée Marie Bumb
                                    RENÉE MARIE BUMB
                                    United States District Judge

Dated:     April 14, 2015

25